This morning, by vacating the decision of the district court, this court can reaffirm the principle that a district court may not disregard or weigh plausible allegations in  The district court basically made two decisions in ruling in favor of the appellees. In this case, your honors, the district court felt that there were no plausible allegations pled as to causation and no plausible allegations pled as to gross negligence. Now, as to the causation element, the district court misinterpreted or misapplied the plausible allegations standard. And just to reiterate the law that the district court should have followed, the district court should have followed the law that says that the complaint only has to state a claim upon which relief can be granted, provide the court with sufficient factual content from which to draw the reasonable inference that the defendant is liable for the misconduct, and then Bell Atlantic adds that a motion to dismiss should be granted only when a plaintiff is to state a claim that's plausible on his face. And what evaluates the motion to dismiss, as the court is aware, the district court should have accepted all well-pled facts as true and also should have viewed those facts in the light most favorable to the non-movement. Under Texas law, as the court is aware, causation is typically a question of fact. That's inappropriate for resolution on a motion to dismiss. The Fifth Circuit has also adopted that principle that under Texas law, causation is a question of fact for the jury, and it also allows circumstantial evidence to form a sufficient basis for the causation. What do you do with the Texas Supreme Court's case in Sanchez? Well, that case, Your Honor, as we pointed out in the supplemental briefing, that question dealt with a completely different issue. That question dealt with an interpretation of using personal property in a Texas tort claims act. So that was a different analysis that was applied to that. But it's still causation, isn't it? Well, it was for determining whether there was a use of personal property. And there are some nuances under the use of personal property, whether there's a waiver of immunity for purposes of the Texas Tort Claims Act. But, Your Honors, in this case, again, the issue was not whether the appellants could prove causation. The issue was whether they had pled causation in the complaint, and that's what the district court should have looked at. If you looked at, if you look through the 46-page complaint, there are dozens of paragraphs where the appellants have pointed out the issues, they pointed out the nexus between the fact that the telecommunications companies, they were aware of the necessity for being able to locate someone readily in terms of a life or death emergency. They were. So, obviously, the district judge was aware, perhaps misapplied standard, maybe not. But this is an Iqbal Twombly case, and the judge is entitled to look at whether the allegations are plausible, not just that you said there's causation, not just that you said there's recklessness. And you know better than I do what the interpretation was. What's, I mean, I'm very sympathetic, you have an enormously lengthy complaint covering an awful lot of things. But it does seem to me that the central fact here is that all the reasons that went into this sad situation, tragic situation, it was not the telecommunication companies that caused any part of that other than several minutes of it. And your allegation is so that several minutes, plausibly read, would not have altered the outcome. So what's, you got a lot of responses to that, perhaps, but what's wrong with that analysis? Well, Your Honor, there are two things wrong with that analysis. The first thing is that the district court, in doing that, in making that analysis, will have to say there are two plausible allegations here. We've got one plausible allegation alleged by the appellees and one alleged by the attorneys. What's your plausible allegation that wasn't, that should have overcome what I just said? Neither should have overcome the other. That's not the purpose of it. Well, no, what is, what I'm asking, identify it. I mean, your plausible allegation, obviously it must come from the complaint. You have some allegations about, you know, how soon these would have shown up on cruiser monitors and other situations. But, but it seems to me the ultimate problem for the allegation, and correct me, or do your best to persuade me, is that several minutes is the delay that you lay at the feet of the telecommunication company. And several minutes would not have altered the outcome under your own allegations. Well, no, it would have altered the allegation, Your Honor, drastically. And if the telecommunications defendant had used available technology, that technology would have identified the exact location within a few feet. The telecommunication technology that was available is similar to what Uber is using now, where using the PIN, an Uber driver can pull up next to you within just a few feet. That technology was available to the telecommunications defendants at that time. If that telecommunications technology had been used at that time, what would have happened is Ms. Cook's call would have shown up on police cruisers, not just in the 911 department. So it would have shown up on police cruisers. It would have shown up with the EMT that were three or four minutes away. So that's what would have changed. That would have added additional responders. It wouldn't have been just— But according to your complaint, and you can correct me if I'm reading it incorrectly, but according to your complaint, some determinations were made by the City of Dallas Dispatch and all of that with regard to how to respond to the call, which resulted in some 50 minutes between the time the call was placed and the time the police actually showed up. Is that right? That's correct, Your Honor. And so how is it then—and I don't want to presume that I'm getting at the same thing I think Judge Southwick was getting at—so how is it then, though, that those few minutes would have mattered with regard to the causation question and what you have to plead in that connection? Again, two plausible allegations. One plausible allegation is that the officers who actually responded, the 911 operator who actually responded, would have taken certain actions. Would they have taken actions different if that address had appeared within 30 seconds? That's one issue. The other issue, which is what the district court ignored, is that if that address had appeared on the screens of the other police in the area, not the responding officers— that's where the district court went awry. He looked only at the responding officers, did not look that there were other officers who testified at a criminal trial. There was an EMT who testified that they were three or four minutes away from the house. There were other officers who have testified—again, this is deposition testimony from other officers who have testified—that if they had seen that address on their patrol cruisers, in their patrol cruisers, they would have responded. They also testified that the deceased was screaming for 16 minutes. They also testified that if they had seen that address on their computers in their cruisers, they would have arrived there, they would have heard the screams, they would have kicked the door in, they would have saved their life. So that's the plausible allegation that's pled in the complaint. And what's the paragraph that we need to go to for that? Your Honor, the allegations start in page—I'm sorry—complaint 72, 72 through about 86. Is there a special one that says other officers would have arrived in time? Yes, Your Honor. That's the one I'm looking for. 76 through 82. The officer said that if they had received Ms. Cook's address earlier, they would have arrived earlier, they would have kicked in her door because they would have been able to hear her screams which lasted 17 minutes. So that's—and then, Your Honor, another— Oh, is that what you're talking about at paragraph 78? Starting there? Well, there are multiple ones. All right. Yes, Your Honor. All right. And the other item, Your Honor, that the district court ignored is the principle that there can be more than one cause of action. There can be concurrent causes of action. And I want to reference a discussion on concurrent and superseding liability that Judge Sidney Fitzwater, the northern district, discussed in a Texas case, applying Texas law. It's Davis v. Dallas County, 541F sub 2nd 844. There he says that more than one action may be the proximate cause of the same injury. A superseding cause, which is what Appleese argued, is an act or admission of a separate agency that destroys the causal connection between the negligent act or admission of the defendant and the injury complained of. Here's the key. The foreseeable negligence of another does not break the chain of causation. That's Durham Transportation v. Valero. Again, this is cited in Davis v. Dallas County. When a new cause of action cooperates with the defendant's original negligent act in causing the injury, the original defendant remains a proximate cause of the injury. Here, what started this chain of events is when that address didn't show up, that's the first, that was the first negligence that happened. Even before you get to the city of Dallas's negligence, the first act of negligence, gross negligence, because they were aware that there was technology that existed that could have solved this problem. So the very first act was that their technology didn't allow the address to show up. Once it didn't show up, the causal nexus is it prevented other officers in the area from being able to respond. It prevented EMT from being able to respond. There is no dispute that she screamed for 16 minutes. You could hear her. The tape is in the record. If the court were to look at it, it's not in the complaint, but because of the consolidation of cases, the tape wound its way into the record. But she screamed it for 16 minutes. There's no dispute. So there's no dispute that the Dallas police chief said that their normal response time is six minutes. There's no dispute that EMT testified that they were three or four minutes away. This is testimony in a criminal trial. So that testimony is on record, and we reference that testimony in the petition. So the very first act of negligence was the telecommunications equipment failing. And this was equipment that the appellants wanted. They wanted, because of her prior history with her ex-husband, she needed to be able to be located quickly. She went into a store, purchased a phone from the telecommunications companies, and received a representation from them that she would be able to be located using technology in a phone. It didn't work. When she called that day, the address, as a matter of fact, we don't know if their technology ever helped get an address, because she had called before. They had her address in other records. So the telecommunications companies' services and products never worked. They never worked. They had made a representation that they would work in being able to locate her. So, again, the district court went through and ignored the evidence. The evidence is to gross negligence. There can't be anything more gross than the fact that these telecommunications defendants recognize, and they've represented, and all this is in the complaint. They represented to Congress and the Texas legislature that they know about 911 location tracking. They represented that they are aware of it, and they had the best technology at the time. Well, they didn't. Again, there's evidence in the record, and, you know, paragraph 130, for instance, notifies them that there were several testing companies and independent engineering firms that indicated that there was better technology already in the marketplace. Well, they could have, again, enabled Ms. Cook's address to appear on the patrol cruisers. Again, not just in the 911. That's where the appellees want the court to focus. That's where the district court focused. The district court just looked at those actions, and the district court said, well, maybe their action wouldn't have been any different if the address had been received earlier. But, again, this is a motion to dismiss. The evidence hadn't been developed. There's no discovery has been allowed against the city of Dallas, no discovery against the telecommunications defendant. But, again, for the purposes of the motion to dismiss, the district court should have assumed the truth of those allegations that were pled. They were all plausible because we have testimony from the first responders that they were a few minutes away and that they would have reacted quickly. Thank you. You may proceed. May it please the court. My name is Cindy Clauston, and I'm counsel for T-Mobile and MetroPCS. I, along with Nolan Knight, who's counsel for Samsung, will be addressing today why this court should affirm Judge Solis's decision dismissing the telecom defendant from this case. I will start, Your Honors, in addressing first the implausible nexus here and why the district court properly applied the standard. I will also address that why, even if the plaintiff's allegations were plausible, why they will fail under, as a matter of law, the two Texas Supreme Court cases of IHS and Samsung. Mr. Knight will address the foreseeable link and the lack here of a foreseeable link and why, therefore, causation, proximate cause, fails, and then wrap up with addressing why also gross negligence fails here as well as why this court can affirm for independent reasons under the doctrine of judicial estoppel. I want to start, Your Honor, with the key allegations of fact here. And I think as Judge Southwick was asking our opponent here, there's only a couple of key allegations of fact, even though the complaint is long when you boil it down to take out the conclusion, conclusory statements, but look at the key allegations of fact, which were certainly given all deference here by the district court. First, with Ms. Cook's life in danger, she used her cell phone, Samsung phone, over the T-Mobile wireless network to make a 911 call. Ms. Cook, as alleged, was a frequent user of 911, and she was a known domestic violence victim. She called from a neighborhood and was of a class that the plaintiffs alleged were systematically discriminated against. It was immediately apparent to the 911 operator who answered her phone call on that day that she was in danger. Despite all of that, her call was never categorized as a critical call. Mr. Pittman talked about the six-minute window that Chief Brown in the City of Dallas talked about for responding to critical calls. This call was never designated as a critical call by the City of Dallas, not by the 911 operator, not by the dispatcher, and not by the police. That decision, as the district court properly determined, it was the systemic issues of discrimination, the decisions that were made along a chain that has absolutely nothing to do with the telecom defendant's technology or any ability for us to have intervened in any of those processes. Counsel, it seems to me that the argument is that, at least in terms of what this address would have appeared in police cruisers, computers, or whatever they would have, that, at least as an allegation, they could make an independent decision, not waiting for a 911 dispatcher to tell them what category this call fits into, critical or otherwise, and they could have responded. What's your response? That's implausible. Under the Iqbal and Twombly proper standard here, the court looked, as the court here did, Judge Solis did, at those allegations in light of what was actually pled in the real world and what actually happened, as well as how that would have actually worked. First of all, Judge Solis did address the issue of police that were in the vicinity several minutes after the technology had worked and shown to the 911 operator what the location information was. Nevertheless, those police officers never took the call. They never were dispatched. Well, after several minutes, is it the allegation in the complaint that the police cruisers actually had the address or just the 911 operator or neither? The 911 operator had that, and that is because that's the way the city of Dallas' 911 telephone system works. Okay. So there's no allegation in the complaint that after several minutes the police cruisers had this information? No. It's only that they could have had it. Understood. So I'm looking at what the complaint says. Yes, sir. And obviously the allegation is if there was better technology, the police cruisers would have had that, and that's what I'm looking for a response to. You're turning to evidence. I'm trying to look at what's in the complaint. So why is that not a plausible allegation that had this appeared, you'd also need to allege they could make an independent decision and not have to check with Miss 911 call and they don't need to check with the dispatcher should we respond to this or not. Is all that captured in the complaint? Well, there's two reasons, Your Honor. First, a 911 telephone system, as alleged by the plaintiffs, has a 911 system that goes into a 911 operator, a PSAP, that then goes to a dispatcher, that then goes to the police officers. And also that makes sense, Your Honor. Are you explaining what you know about the technology or are you explaining what's in the complaint? I'm explaining what's in the complaint. All right. So based upon the commission that cited that was over the city of Dallas telephone system, and that's what the plaintiffs rely on to talk about what a proper 911 system would have, as well as if the technology went straight to the police cars without any human triage here of having a dispatcher say, what is the emergency that's being called on? Is there an emergency at all here? And then if there is an emergency, what do we need to send? Do we need to send a fire truck? Do we need to send a police officer? Do we need to send an EMT? So that allegation doesn't work when you apply the standard of Iqbal and Twomley that's been applied in this court in Oceanic, that you apply the allegations, give them all the deference, but you do have to apply it in light of what was If that makes sense, that the court is allowed to use common sense. Why doesn't it make sense? Why doesn't it make sense that a person in the area could say, hey, let's go check it out, and we'll go check it out? And why isn't that a plausible pleading? Well, it doesn't make sense here because, first, those same police officers were in this vicinity and didn't take the call. Second. But they didn't have that technology that instantly told them about it. It was filtered through this other system. Well, and even if they did have that, you would then have, so even if that did exist, you would still have the problem of if you have all the police officers in the vicinity rushing at the same time to different emergency calls, you're not going to have, you're not going to know what type of emergency it is. And here, of course, the discriminatory practices that are alleged would have applied in the neighborhood. The allegations are that one of the reasons that the police officers took 50 minutes to finally reach Ms. Cook's home, even after they had the location information several minutes later, is because of the discrimination from the neighborhood that she was in. Mr. Pittman mentioned some allegations based on depositions, if I recall exactly how he put it, that some officers testified they would have responded without waiting for the dispatcher. They didn't actually say that, but they would have responded had they had the address. What's the context for that? Well, Your Honor, those paragraphs, first of all, that are cited are cited that if we would have had the information earlier, we could have responded. That is true here as well. They didn't say they would have responded? I heard, Mr. Pittman. That they could have responded. So there's no allegation based on deposition of a specific officer saying, if I'd had that address, I would have responded? All I know about that is what I just heard. The alleged facts are that there were police officers in the vicinity that could have responded, as we read it. But even if it were, would have, Your Honor, even if we allege or take that fact as true, again, it's not plausible that those police officers would have done any different. I don't understand why that's not plausible. It's not plausible based upon the facts that are pled that the only allegation of negligence on the part of the telecom defendants are that there was a several-minute delay in providing the location information. It's not plausible to think that that several-minute delay here led to 50 minutes of the police officers finally getting to Ms. Cook's home. And when they got there, all they did was knock and leave. Because it wouldn't have been those police officers. It would have been conscientious police officers who responded in much quicker time. Your Honor, based upon the facts that are pled, there's no reason to think we'd have a complete change of heart because the allegations are that there was a systemic problem within the police officers to discriminate against domestic violence victims. But if the people said they would have responded, then they're not the ones who are discriminating people. But, Your Honor, based upon the allegations that are pled, the particular allegations are that two days later, Ms. Cook's family calls after not being able to find her calls from her house, from a different cell phone, 911, and that they are discriminated against in the same way. Their call is not taken seriously. Police are not sent out to help them. So there's no plausible inference that you would have a complete change. So are you saying there was a superseding intervening cause that would have extinguished any potential liability from the telecommunications people? Is that what you're saying? That's true. The causation link here, Your Honor, is correct. There is no proximate cause. The causation link, because of the steps and the only alleged negligence on the matter. So is that what the district court found, that there was a supervening intervening cause, something along those lines? That it wasn't plausible to connect a several-minute delay with the facts that happened in this case. And that is consistent with the two Texas Supreme Court cases that have found that there's no cause for that. But you seem to be relying on their allegations that there was a systemic problem with regard to people responding to calls in that area. Well, I mean, those are just some allegations they made. But you're saying you can take those allegations as true. We took all of them. The district court took all of them. It's just not true that your people were negligent. We can't take that one as true. The only negligence alleged is a several-minute delay, and there's no causal link that is plausible that would connect us. And even if they can get past Iqbal and Twombly here, they then fall into, well, what is the alleged defect here of the technology? The only alleged defect is a delay in hindrance that falls clearly within the Texas Supreme Court's decision in Sanchez that says as a matter of law, a mere delay or hindrance is not enough in Texas under Texas law. Well, it depends on the statute, perhaps. Well, the Texas Tort Claims Act applies proximate cause. We, Your Honor, under the Texas Immunity Statute, have the same proximate cause standards. The cases that are in the context of Texas Tort Claims Act have made it clear proximate cause is proximate policy. Okay, unless my colleagues have other questions. One of your colleagues does. There's been maybe a premise for some of my questions. I hope you can quickly address it. Is the allegation that the more modern technology that could have been used, would have directed the address immediately to the 9-11 operator, or is it also that it would have directed the address immediately to police in the area? Is that the allegation, that it would have gone faster to the dispatcher, or is the allegation that it would also have gone immediately to police in the area? I just want to know what the claim is. As alleged, it would have gone immediately to the onboard computers on the police cars, and they need to take out of the chain the 9-11 operator and the dispatcher, who they allege delayed and designated the call as noncritical. Thank you. Okay, thank you. We have your argument. May it please the Court, Nolan Knight here on behalf of the Samsung appellees. Members of the panel, we respectfully request that the Court affirm Judge Solis' dismissal of the Cook appellant's causes of action. There are three issues that I want to touch upon today that I think may be responsive to some of the questions that the Court had regarding the notion of factual plausibility with respect to this theoretical alternative technology. The bottom line is neither Samsung nor T-Marble is legally accountable for this theoretical alternative because we were not, as a matter of Texas law, the cause, in fact, of the injury. Independent of that, we had no legal duty in that regard because, as admitted in the Cook appellant's complaint, the technology that was made available here actually worked. Ms. Cook's location information was received by the City of Dallas within several minutes. Notwithstanding the suggestion by Mr. Pittman that almost as if there must have been some metaphysics, notwithstanding the fact that she picked up the telephone and because she picked up the telephone and called the 911 operator, they were able to ascertain her location. There is no plausible alternative explanation as to how they otherwise would have obtained that information. So the point of departure, I think, is the proper analytical framework for a 12B6 analysis in a case of this kind. And Judge Solis applied the correct methodology because he actually looked at the affirmative articulation of facts in the Cook appellant's complaint to determine that the universe of facts that they were suggesting characterized the event could not be reconciled with the legal criteria for recovery. There is nothing novel or out of the ordinary about an approach of that kind. In the party's briefing, we cite, for instance, the Oceanic Exploration v. Phyllis Petroleum case, which I actually think is a case for which Judge Erwot said on the panel. And in the context of a Rule 12 dismissal, the court noted that the dismissal was appropriate because, quote, these allegations fail the test of common sense plausibility when considered together with other allegations in the complaint. That's critical because the other allegations in the Cook appellant's complaint is that the Samsung technology and the T-Mobile technology operated to convey where Ms. Cook was within several minutes, which was a time sequence under the six-minute response time that Mr. Pittman made reference to. She could have been aided. So it had nothing to do with the operation of the technology, why she was ultimately regrettably murdered. There were the choices of individuals over whom neither T-Mobile nor the Samsung appellees had any responsibility. One additional, I think, significance of Oceanic, Mr. Pittman fairly unapologetically suggests that the issue of causation simply cannot be resolved in a Rule 12b-6 context. Oceanic affirmed the Rule 12 dismissal on the grounds of implausible allegations of proximate cause. So we know that cannot be the case. And the key, again, is that when the appellants affirmatively articulate positive statements of fact which are irreconcilable with the legal criteria, dismissal is appropriate. A specific way in which the positive affirmations of fact here are irreconcilable with the legal elements relates to the Sanchez opinion. Sanchez makes clear that under Texas law, when someone reveres that an instrumentality in some passive way furnishes the conditions, or another way to characterize it is creates a circumstance where some independent actor or independent circumstance actually causes harm, that the passive instrumentality as a matter of Texas law cannot be deemed the cause in fact. So even if you assume for the sake of argument that there is this other technology whereby location information can be beamed directly into a police cruiser, nothing about the technology here actually in an affirmative way caused the injury. At most, at most, it could have furnished the circumstances whereby other individuals neglected their responsibility. So in that respect, neither T-Mobile nor the Samsung Appellees can be deemed the cause in fact. One other significant feature, I think, of Sanchez with respect to the Samsung Appellees in particular is that the factual context in which the Texas Supreme Court was applying that cause in fact principle is on all fours with the purported nexus between Samsung and the alleged injuries here. At page 726 of Sanchez, the court even commented, quote, We must therefore determine whether the phone's condition was a proximate cause of Sanchez's death. That's precisely the purported nexus that the Cook appellants are attempting to attribute to Samsung. They're saying that Samsung manufactured a phone and that the phone somehow in and of itself in its operation could have been a proximate cause of Ms. Cook's death. But on the face of the pleadings in Sanchez in the Texas equivalent to the 12B6 context, procedural context, the court held that that can never rise to the level of proximate cause. So I understand your argument. Your point is they responded timely anyway. I mean, they got the information timely anyway, so it doesn't matter that it could have gotten the information timely in another format. But you... I've gotten the impression that you're saying that that technology doesn't exist in your argument, and I thought it was clear that it did exist and that other police departments do have that. It may be a tad beyond the scope of the record, but it does not exist in the form that the Cook appellants have suggested. My understanding of the technology is that for that kind of data to be routed directly into a mobile police cruiser, there would need to be a physical connection. And that's one of the reasons that you have to... I think Ms. Clauston made an excellent point. You have to have someone to actually digest and characterize the information so that it's meaningful to the responders in the field. Well, counsel, that sounds to me like summary judgment evidence and not something we can consider. It comes down to, is there a claim that such technology exists? Do they have to prove it in their complaint, or is that for later in the proceedings? Your Honor, that's a good point, and that's precisely why we are not attempting to base any of our dismissal arguments on the fact... You're answering questions. Instead, an issue that permeates all of the causes of action that the Cook appellants have asserted is that at most, whether the technology exists or doesn't exist, it may have furnished the conditions, which is not enough as a matter of Texas law. So we never get to the point of whether or not the technology does exist as they suggest it does. What is your position on the misrepresentation, wrongful death, and survival claims? How do those shake out on this? All of those causes of action also have cause in fact as an element, so they fail for the same reason that all other causes of action fail, because at most, the respective appellees could have created conditions which is not sufficient as a matter of law. But misrepresentation even? I mean, wrongful death perhaps, but why would misrepresentation be in that category? That it would have to be caused? I mean, that would be affected at the time the misrepresentation was made, not at the time of the death. Because if there was a misrepresentation, and we'll assume for the segment that there was, that misrepresentation was still not the cause of injury. If Ms. Cook needed fairly rapid location capabilities, that was actually on the face of the Cook appellants' pleadings, that's actually what transpired here. It took only several minutes for her to be located. And within the factual universe that the Cook appellants have created, that in fact would have been sufficient, but for the actions of people over which the Samsung appellees and the T-Mobile appellees had no control. So it's not plausible to suggest that whatever the facts may bear out, that from a legal plausibility standpoint, the misrepresentation or any other causes of action for that matter had any causal relationship to Ms. Cook's injury. Another defect that I'd like to address in my limited remaining time is the more global issue that when we're talking about a phone that worked, it allowed Ms. Cook to connect to the 911 system. It even went further to enable the 911 dispatcher to discern Ms. Cook's location and all of that transpired within a time sequence where something could have been done about it. You cannot satisfy the foreseeability prong, which is a separate stand-alone prong of causation. Causing factors is positive. Foreseeability is an additional reason why it fails. But the significance in that regard is that Texas law treats the foreseeability analysis as much an issue of causation as it does an issue with respect to if there's any legal duty whatsoever. So to your point, Judge Elrod, regarding misrepresentation or some of the other causes of action, for instance, gross negligence, there was no legal duty in this context because the technology did work. The technology did work in a way that would have allowed Ms. Cook to have been aided under the circumstances that exist. So no one, no rational person, had a basis to anticipate any additional technology, however hypothetical or however real, was even necessary. So even assuming for the sake of argument it did exist, there's no legal accountability that can be attributed to either Samsung or the T-Mobile. For those reasons, we respectfully request that the Court affirm Judge Solisa's dismissal of the Cook appellant's cause of action. Thank you very much. You have saved time for rebuttal, counsel. Your Honor, to begin, let me dispel this notion that the technology worked. It never worked. The telecommunications service and the product, it never worked. That's the allegation in the complaint. Anything else, any additional evidence that the appellees want to present would be presented on summary judgment. In the complaint at paragraph 20, it clearly says that Metro PCS does not provide addresses. There's nothing else in the complaint that said it ever worked, the technology or the service. The only thing we know is that a telephone call was made to the 911. We're talking about the location-finding service. That never worked. Samsung never worked through T-Mobile. With respect to the technology that would have allowed the address to appear in the patrol cruisers, that's in the complaint at paragraph 76. What's in the complaint is what the police testified about, not something we've made up. The police, during depositions, testified that the technology would have allowed the address to appear in the patrol cruisers. And again, they're outside the record. I'm in the complaint at paragraph 76 where the police, whose depositions we took, that's what they said. Go ahead. Excuse me, counsel. We've discussed the Sanchez case before. It is talking about a different statute, but nonetheless it's discussing proximate cause. And it says for a condition to be a cause in fact, the condition must serve as a substantial factor in causing the injury without which the injury would not have occurred. Not some hypothetical injury, but the actual injury. When a condition, it's talking about property, but it's talking about proximate cause. When a condition, here the failure to have the more advanced system, merely furnishes a circumstance that makes injury possible, that's not a proximate cause. If that were applicable to telecommunications as opposed to just property, isn't that what we're talking about? Your Honor, I think the Sanchez case stands for the unremarkable proposition that facts matter. In that case, there's a detail. The actual facts matter as opposed to some hypothetical of what could have happened. If somebody hadn't been released at a certain time, if they get the case law, they wouldn't have been in the car where the accident occurred. But what you're looking at is the facts that actually led to the injury that actually occurred as opposed to some hypothetical other facts. Well, those are attenuated facts. Again, look at the facts in the complaint, which is what we're limited to. The facts in the complaint say that if the technology had been used. Again, just like Uber. I'm not sure why Applees contend that the technology doesn't exist. We've got several sites in the record, 100. Well, they said that they don't contend that for purposes of appeal. They just were answering my question. Okay. Okay. I apologize. I apologize. So the technology, if it had been used, the address would have shown up in the patrol crews. Again, this is not speculation. These are the officers, the 911 officers who testified that the address would have shown up. Also, in the complaint at 81 and 82, paragraphs 81 and 82, the officers said if the addresses had shown up, they would have arrived there. They would have kicked the door in. Again, this is not hypothetical. This is what would have happened had the technology been there. These are officers who were in the area. These are officers who worked at precinct. These are officers who testified under oath at a deposition that the technology would have appeared in their patrol cruisers if the address had appeared. You said the address, they didn't work at all, that the address didn't appear anywhere. But why isn't that implausible in light of the fact that the 911 did give the direction about the residents? Well, Your Honor, it's outside of the record, but I took the depositions, and I could tell you that Ms. Cook had called there before, and I could tell you that the officers looked at prior call sheets to determine the information. So there's nothing in the complaint. And, again, There's nothing in the complaint that says that it would have had to have worked for the 911 dispatcher. They just knew of her is your position. Correct, Your Honor. Okay. And I think even they admit that in their briefing. One of the briefs, they go into her history as a domestic violence victim. But nevertheless, Your Honor, again, we can't separate that the initial cause, the initial negligence, was because the address didn't show up. So there was no superseding event that was present here. Well, assuming the address didn't show up, and that's what you pled, they still responded in a certain amount of time. I mean, they got it within the same amount of time, even if the officers didn't actually respond. The Appalese or the City of Dallas? The City of Dallas still did that part of the response within a certain amount of time. And it's just the officers that didn't go to the place. Correct. That's the concurrent negligence. But those same officers, Your Honor, and that's what's in the complaint, the same officers who showed up late in their depositions, they testified that if it had arrived earlier, and again, you know, since we only have 46 pages of the complaint, I couldn't put in everything that happened in the deposition. But those same officers who showed up late said that if they had gotten the address earlier, because there are a lot of other things that they had to investigate in the meantime, which caused them to show up late. But they said those same officers said that if they had received the address in their cruises earlier, they would have arrived there, they would have kicked the door down, because they would have heard her scream. Thank you. Thank you, counsel. Do you want another break? We're going to take another break.